UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
NOV - 9 2010
CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA

v.                                             Criminal Action No. 2:10cr89

CHARLES R. ENGLE,

       Defendant.

## MEMORANDUM ORDER

Pending before the court is the defendant's renewed motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). The defendant, Charles R. Engle ("Engle"), was tried on a multi-count indictment charging him with bank fraud (count one), wire fraud (counts two through ten), mail fraud (counts eleven and twelve), making false statements (count fourteen), and money laundering (count fifteen). Engle moved for judgment of acquittal upon the close of the government's evidence and upon the close of all the evidence. The court denied both motions. On October 6, 2010, the jury found Engle guilty of counts one through twelve. The jury acquitted Engle of counts fourteen and fifteen. Engle filed the instant motion on October 20, 2010, the government responded on October 29, 2010, and Engle filed a reply on November 4, 2010. For the reasons set forth below, as well as those stated on the record in response to Engle's previous Rule 29 motions, the court hereby **DENIES** Engle's renewed motion for judgment of acquittal.

### Standard of Review

In assessing the sufficiency of the evidence in the context of a motion filed pursuant to



RECEIVED
U.S. CLERKS
OFFICE
2010 NOV -9 P 3:15
NORFOLK, VA.

Federal Rule of Criminal Procedure 29, the court must view both "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc); United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) ("A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'"). Thus, the court must sustain the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Myers, 280 F.3d 407, 415 (4th Cir. 2002). In applying this standard, the court "must consider circumstantial as well as direct evidence." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Furthermore, the court "must remain cognizant of the fact that 'the jury, not the reviewing court, weighs the credibility of the evidence and . . . if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" Burgos, 94 F.3d at 862 (quoting United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994)).

## Analysis

Engle's renewed motion for judgment of acquittal challenges the sufficiency of the evidence as to each element of all counts charged. In addition, the motion specifically challenges the sufficiency of the evidence as to count one's charge that Engle defrauded HSBC Bank, count four's charge that Engle telefaxed a signed mortgage application to Shore Bank on or about August 5, 2005, the materiality of the scheme to defraud alleged in counts one through twelve, and Engle's intent to defraud. Each challenge is addressed in greater detail below.[1]

---

[1] This Order addresses the specific challenges raised in the instant motion. As to the general challenge made to each element of all counts, the court relies on the reasoning it provided on the record for denying defendant's prior Rule 29 motions.

2

### A. Evidence Sufficient to Show Engle Defrauded HSBC Bank

Engle first argues that the evidence was insufficient to support a finding that he defrauded HSBC Bank as alleged in count one. Under Title 18, United States Code Section 1344, it is a federal crime to knowingly execute, or attempt to execute, a scheme "(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." The term "financial institution" is defined as an institution whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"). 18 U.S.C. § 20(1).

The evidence introduced at trial indicated that Engle obtained the mortgage at issue in count one from Decision One Mortgage ("Decision One"), a wholly-owned subsidiary of HSBC Bank.[2] According to Engle, the mere fact that Decision One is a subsidiary of HSBC Bank does not support a finding that the funds he received from Decision One were owned by, or under the custody or control of, HSBC Bank. In making this argument, Engle relies on the United States Court of Appeals for the Ninth Circuit's opinion in United States v. Bennett, No. 06-50580, 2010 WL 3516438 (9th Cir. Sept. 10, 2010). In Bennett, a defendant challenged his bank fraud conviction on the ground that the evidence failed to show that the mortgage funds he received from Equicredit were under the custody and control of its federally insured parent, Bank of America. Bennett, 2010 WL 3516438, at *3. In response, the government argued that, as a matter of law, a parent corporation owns and controls the assets of its subsidiaries. Id. at *4. The

---

[2] The parties stipulated that HSBC Bank was, at all relevant times, an institution whose deposits were insured by the FDIC.

Ninth Circuit disagreed and found that no rational juror could conclude that funds disbursed by a subsidiary were under the control of the parent based solely on the existence of the parent-subsidiary relationship. Bennett, 2010 WL 3516438, at *7 (emphasis added).

In contrast to Bennett, the government in this case did not rely solely on the existence of Decision One and HSBC Bank's parent-subsidiary relationship to show that the funds Engle obtained from Decision One were under the custody and control of HSBC Bank. Michael Holcomb, a former Decision One executive, testified that, at all times relevant to this case, Decision One's mortgages were funded exclusively by HSBC Bank. Viewed in the light most favorable to the government, this evidence is clearly sufficient to support a finding that the funds Engle obtained from Decision One were owned by, and under the custody and control of, HSBC Bank. Burgos, 94 F.3d at 863. Accordingly, Engle's conviction as to count one must stand. Myers, 280 F.3d at 415.

**B. Evidence Sufficient to Show Engle Sent a Telefax as Alleged in Count Four**

Engle's next argument is that the evidence was insufficient to support a finding that he telefaxed a signed mortgage application from California to Shore Bank as alleged in count four of the indictment. Count four of the indictment alleged that Engle telefaxed a signed mortgage application from California to Shore Bank on or about August 5, 2005. The evidence introduced at trial indicated that Engle sent the telefax referenced in count four on July 29, 2005.[3] "Proof that a crime occurred reasonably near the date charged in the indictment is sufficient unless time

---

[3] Linda Gaskill, a Shore Bank Vice President, testified that Engle telefaxed the signed mortgage application referenced in count four to her in July or August of 2005. In addition, the fax header on the application indicated that it was telefaxed from California to Shore Bank on July 29, 2005.

4

is a material element of the offense, or the actual date of the offense implicates the statute of limitations . . . ." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993) (citing United States v. DeBrouse, 652 F.2d 383, 390-91 (4th Cir. 1981)). Neither of these concerns are present in this case. As a result, the evidence introduced at trial was sufficient to support a finding of guilt as to count four.[4] See Brewer, 1 F.3d at 1437 (noting that evidence showing a defendant possessed cocaine in March or April of 1990 was sufficient when the indictment alleged possession in or about February 1990); United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994) (concluding that evidence showing a defendant possessed a firearm in relation to a drug trafficking offense in August of 1991 was sufficient when the indictment alleged possession in July of 1991).

## C. Evidence Sufficient to Show False Statements were Material

Engle's third argument is that the evidence was insufficient to show that the false statements made regarding his income in furtherance of the scheme alleged in counts one through twelve were material. As noted by Engle, "materiality . . . is an element of the federal mail fraud, wire fraud, and bank fraud statutes." Neder v. United States, 527 U.S. 1, 25 (1999). "In general, a false statement is material if it has the natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." Id. at 16. As noted by the government, Linda Gaskill, Michael Holcomb, John Hellman, Robert Corridan, and Scott Schreiber all testified that the income information provided by a borrower is a factor

---

[4] It is important to note that the court instructed the jury as follows: "Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged, it is not necessary for the government to prove that the offense was committed precisely on the date charged."

considered by lenders when deciding whether to approve a mortgage. Hence, a rational juror could have concluded that the false statements made regarding Engle's income were material. Myers, 280 F.3d at 415; Burgos, 94 F.3d at 863.

In addition to the general challenge to materiality discussed above, Engle argues that the evidence failed to show that any materially false statements were made to Shore Bank in relation to his purchase of the Mason Avenue condominium in April of 2006 as required for a conviction on count one and counts six through ten.[5] In making this argument, Engle fails to account for the employment verification letter Robert Coyne telefaxed to Shore Bank at Engle's request. The letter, which was received by Shore Bank on April 10, 2006, stated as follows: "This is to confirm that Charlie Engle is currently employed as the Director of Business Development at the salary of $105,000 per annum." Gov. Ex. 202. At trial, both Engle and Coyne conceded that Engle never received any compensation from Three Week Kitchens. Taken in the light most favorable to the government, this evidence supports a finding that the income verification letter contained a false statement.[6]

---

[5] In particular, Engle argues that the only false statement made in connection with the loan to purchase the Mason Avenue property was the false income amount stated on his personal financial statement, which was prepared on April 13, 2006. Because the evidence indicated that Engle's loan was approved on April 11, 2006, Engle argues that the false information contained in his personal financial statement could not have been material. The court agrees with Engle; however, as discussed in the text above, Engle's personal financial statement was not the only false statement made in connection with the loan to purchase the Mason Avenue property. Accordingly, the jury's verdict as to count one and counts six through ten must stand.

[6] The court is aware that both Engle and Coyne testified that Three Week Kitchens was a start-up company, and that the income verification letter was never intended to be a statement of current income. However, Linda Gaskill testified that neither Engle nor Coyne ever informed her that the letter was not a statement of actual income. In addition, the text of the letter clearly stated that Engle was currently employed by Three Week Kitchens at a salary of $105,000 per annum. Given the conflicting nature of this evidence, the jury was required to make a credibility determination regarding the veracity of the letter. For Rule 29 purposes, the court must assume

As noted by Engle, the evidence showed that Shore Bank approved his loan to purchase the Mason Avenue property on April 11, 2006. Because the income verification letter was received prior to the approval of Engle's loan, a rational juror could have concluded that the false income information contained in the letter was material.[7] Myers, 280 F.3d at 415; Burgos, 94 F.3d at 863.

### D. Evidence Sufficient to Show Engle Acted with an Intent to Defraud

Engle's final argument is that the evidence was insufficient to support a finding that he acted with an intent to defraud as required for a conviction on counts one through twelve. In particular, Engle argues that the evidence was insufficient to support a finding that he acted with an intent to defraud when he obtained the loan to purchase the Yarmouth Drive property as required for a conviction on counts one through five and count eleven. Engle also maintains that the evidence failed to show that he acted with an intent to defraud when he obtained the loan to purchase the Mason Avenue property as required for a conviction on count one and counts six through ten. Each of Engle's arguments will be addressed in turn.

The intent to defraud is an essential element of the federal mail fraud, wire fraud, and bank fraud statutes. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008) (noting that the intent to defraud is an element of wire fraud); United States v. Brandon, 298 F.3d 307, 311 (4th Cir. 2002) (noting that the intent to defraud is an element of bank fraud); United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001) (noting that the intent to defraud is an element of

---

that the jury resolved all contradictions in the favor of the government. United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002).

[7] Indeed, Linda Gaskill testified that she relied on the Coyne employment verification letter when processing Engle's loan application.

mail fraud). "To act with intent to defraud means to act with a specific intent to deceive or cheat, ordinarily, for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self." United States v. Ellis, 326 F.3d 550, 556 (4th Cir. 2003); Brandon, 298 F.3d at 311. The intent to defraud "may be inferred from the totality of the circumstances and need not be proven by direct evidence." United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001) (quoting United States v. Ham, 998 F.2d 1247, 1254 (4th Cir. 1993)).

Beginning with Engle's general challenge to counts one through twelve, the evidence introduced at trial, when viewed in the light most favorable to the government, supports a finding that Engle acted with an intent to defraud as alleged in counts one through twelve. Engle's accountant, David Johnston, testified that Engle earned $52,836 in 2005, and roughly $50,000 in 2006.[8] However, Linda Gaskill testified that Engle informed her in 2005 that his monthly income was $15,000, while John Hellman testified that Engle stated in 2006 that his monthly income was $32,500. Furthermore, the government introduced a recording of a conversation between Engle and an undercover Internal Revenue Service agent in which Engle stated that he had a mortgage broker who "didn't mind writing down . . . that I was making four hundred grand a year when he knew I wasn't." Govt. Ex. 801. From these facts, a rational juror could have found that Engle acted with an intent to defraud. Myers, 280 F.3d at 415.[9]

Turning to Engle's argument regarding the Yarmouth Drive transaction and counts one through five and count eleven, the evidence, when taken in the light most favorable to the

---

[8] David Johnston's testimony regarding Engle's 2005 income was corroborated by Engle's 2005 tax return. Govt. Ex. 702.

[9] While the court has limited its discussion of Engle's intent to defraud to the evidence mentioned above, it is important to note that the trial record contains additional evidence indicating that Engle acted with an intent to defraud.

government, once again supports a finding that Engle acted with an intent to defraud. Engle bases his argument to the contrary on his own testimony that he believed the loan to purchase the Yarmouth Drive property was a full documentation loan, and that the income information he provided would be verified. Engle also claims that his bank statements from March and April of 2005 verify the $15,000 monthly income figure stated on the Uniform Residential Loan Application for Yarmouth Drive. However, Linda Gaskill testified that the Yarmouth Drive loan was a stated income loan, and David Johnston testified that Engle only earned $52,836 in 2005. Given the conflicting nature of this evidence, the jury was once again tasked with making a credibility determination. As previously noted, the court must assume that the jury resolved all contradictions in the government's favor. Sun, 278 F.3d at 313. Accordingly, Engle's conviction on counts one through five and count eleven must stand.[10]  Myers, 280 F.3d at 415.

Finally, as to the Mason Avenue loan and count one and counts six through ten, the evidence was again sufficient to support a finding that Engle acted with an intent to defraud. Linda Gaskill testified that Engle informed her that he was currently employed by Three Week Kitchens. In addition, the evidence indicated that Engle asked Robert Coyne to send a letter to Linda Gaskill verifying his employment. While it is true that the evidence does not show that Engle drafted the Coyne letter, or that he instructed Coyne as to what to say in the letter, the fact remains that Engle stated he worked at Three Week Kitchens and caused an employment verification letter to be sent to Shore Bank when he knew that he had not received any

---

[10] It should be noted that even if the evidence that Engle believed the Yarmouth Drive loan to be a full documentation loan were undisputed, a rational juror could have nevertheless concluded that Engle acted with an intent to defraud because of the discrepancy between the income information he provided Linda Gaskill and the income information he listed on his 2005 tax return.

compensation from that company. From these facts, a reasonable juror could have inferred that Engle acted with an intent to defraud when he obtained the loan to purchase the Mason Avenue property. Godwin, 272 F.3d at 666. As a result, Engle's conviction as to count one and counts six through ten must stand. Myers, 280 F.3d at 415.

## Conclusion

For the reasons stated above, as well as those stated on the record in response to Engle's previous Rule 29 motions, the court hereby **DENIES** the defendant's renewed motion for judgment of acquittal.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

**It is so ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Va.
November 9, 2010

10